# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**HERITAGE CHRISTIAN SCHOOLS, INC.,**
        Plaintiff,

    v.                                    Case No. 11-C-1067

**ING NORTH AMERICA INSURANCE CORPORATION, et al.**
        Defendants.

## DECISION AND ORDER

Plaintiff Heritage Christian Schools, Inc. ("Heritage"), a private school located in Brookfield, Wisconsin, has filed a lawsuit alleging various claims under both federal and state law against ING North America Insurance Corporation ("ING"), Security Life of Denver Insurance Company ("Security Life"), and Donald W. Britton. Before me now is Britton's motion to dismiss for lack of personal jurisdiction.

### I. BACKGROUND

According to the allegations of the Third Amended Complaint (the "Complaint"), Heritage is a victim of a fraudulent scheme perpetrated by Richard Incandela and his wife, two individuals who are not defendants in this case because they filed for bankruptcy. The Incandelas convinced Heritage to pay them over $1.5 million to invest in insurance products issued by Security Life and administered by ING. The Incandelas then converted over $1 million of those funds to their own use. Heritage alleges that Security Life and ING are liable for the Incandelas' fraud. Heritage also alleges that Donald W. Britton, the president of Security Life, is personally liable for the fraud because, when he learned that the Incandelas

had defrauded a different Security Life policyholder, he negligently failed to determine whether the Incandelas had also defrauded any other Security Life policyholders, such as Heritage.

Britton has moved to dismiss the claim against him on the ground that he is not subject to personal jurisdiction in Wisconsin. Britton is a Minnesota resident who has his primary business office in Minneapolis. At the time that the events giving rise to this suit occurred, Britton was a Georgia resident who worked out of an office in Atlanta. He is the president of Security Life, which is a Colorado insurance corporation that maintains its principal place of business in Denver. He is also the present of another insurance company, ReliaStar Life Insurance Company ("ReliaStar"), which is a Minnesota insurance corporation that maintains its principal place of business in Georgia. Both Security Life and ReliaStar are affiliated with ING.

According to the Complaint, on April 10, 2007, one of Britton's former business colleagues sent him a letter, which Britton received at his Atlanta office. The letter stated that Mr. Incandela had defrauded a South Carolina school by collecting premiums for Security Life policies and then failing to remit the premiums to Security Life. Britton referred the matter to Security Life's in-house counsel. An ING employee, John Culpin, was assigned to investigate. The Complaint alleges that Britton informed his former business colleague that the matter was under investigation, introduced the colleague to Culpin, participated in a telephonic conference about settling the South Carolina school's claims, and communicated with Security Life's in-house counsel about the matter. Britton did not have any contact with Wisconsin in the course of these events.

2

Britton states in his declaration that he has never lived in Wisconsin and that he owns no property in Wisconsin. He states that he does not have any regular contact with Wisconsin or any resident of Wisconsin, and that his only contacts with Wisconsin have arisen out of his communications with his attorneys in this case and his attendance at a two-day business conference in Lake Geneva, Wisconsin at some point in the last ten years.

## II.  DISCUSSION

In a federal-question case, a federal court has personal jurisdiction over a defendant if either federal law or the law of the state in which the court sits authorizes service of process on the defendant. Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs., 623 F.3d 440, 443 (7th Cir. 2010). Although the present case involves a federal question because Heritage alleges a RICO claim against ING and Security Life, the only claim against Britton is a state-law negligence claim, and Heritage concedes that whether this court has personal jurisdiction over Britton depends on whether a Wisconsin state court could exercise personal jurisdiction over him. (See Br. in Opp. at 9, ECF No. 38.) A Wisconsin state court could exercise personal jurisdiction over Britton if Wisconsin's long-arm statute, Wis. Stat. § 801.05, authorized the exercise of personal jurisdiction and exercising personal jurisdiction would be consistent with the Due Process Clause of the Fourteenth Amendment. See, e.g., Steel Warehouse of Wis., Inc. v. Leach, 154 F.3d 712, 714 (7th Cir. 1998). Heritage argues that three different provisions of Wisconsin's long-arm statute authorize the exercise of personal jurisdiction over Britton, Wis. Stat. §§ 801.05(1)(d), (4)(a) and (10), and that exercising personal jurisdiction under these provisions is consistent with due process.

**A.    Wisconsin Statute § 801.05(1)(d): General Jurisdiction**

3

Heritage first argues that Britton is subject to personal jurisdiction under Wis. Stat. § 801.05(1)(d), which provides that a Wisconsin court has personal jurisdiction when, at the time the action is commenced, the defendant "[i]s engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise." This provision essentially confers personal jurisdiction over out-of-state defendants who are subject to general jurisdiction in Wisconsin. A defendant is subject to general jurisdiction when he has "continuous and systematic general business contacts" with the forum state. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414–16 (1984). This is a demanding standard that requires the defendant to have such extensive contacts with the state that he can be treated as present in the state for essentially all purposes. uBid, Inc. v. GoDaddy Group. Inc., 623 F.3d 421, 426 (7th Cir. 2011). If a defendant is subject to general jurisdiction in a state, then he may be called into court there to answer for any alleged wrong, committed in any place, no matter how unrelated to the defendant's contacts with the forum. Id.

Heritage does not dispute that Britton's personal contacts with Wisconsin are limited to his communications with his attorneys in this case and his attendance at the two-day conference in Lake Geneva. However, it argues that Britton's contacts with Wisconsin are continuous and systematic because he is the president of two insurance corporations—Security Life and ReliaStar—that conduct substantial business in Wisconsin. Both corporations are licensed to sell insurance in Wisconsin, are regulated by the Wisconsin Office of the Commissioner of Insurance, and have collected millions of dollars in insurance premiums in Wisconsin. Between 2006 and 2010, Britton signed the policies that Security Life

4

and ReliaStar issued in Wisconsin on behalf of the companies. (Britton did not sign the policies that Security Life issued to Heritage because they were issued in 2004 and 2005.)

To the extent Heritage is arguing that Security Life and ReliaStar's contacts with Wisconsin can be attributed to Britton personally, that argument is rejected. A corporation's contacts are not attributable to the officers and employees of the corporation. See Calder v. Jones, 465 U.S. 783, 790 (1984); Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984); Pavlic v. Woodrum, 169 Wis. 2d 585, 590 (Ct. App. 1992); 16 James Wm. Moore, Moore's Federal Practice § 108.42[3][b][iii] (3d ed. 2012). To be sure, many courts, including those in Wisconsin, have held that an officer or employee's own contacts with a state cannot be disregarded simply because the contacts were made while the officer or employee was acting on behalf of a corporation—that is, they have rejected the "fiduciary shield" doctrine. See Druschel v. Cloeren, 295 Wis. 2d 858, 868 (Ct. App. 2006); Hardin Roller Corp. v. Universal Printing Mach., Inc., 236 F.3d 839, 842 (7th Cir. 2001). But the contacts of the corporation do not automatically count as contacts of the officer or employee; personal jurisdiction must be measured by the officer or employee's own actions, taken either personally or on behalf of the corporation.[1]

---

[1] Heritage cites Banta Corp. v. Hunter Publishing Limited Partnership, 915 F. Supp. 80 (E.D. Wis. 1995), but that case is not relevant to this case. Banta recognizes that personal jurisdiction over a general partnership is sometimes deemed sufficient to confer personal jurisdiction over its partners. Id. at 84. To the extent that that proposition is true, it is because a general partnership and its partners are one and the same—the partners are the partnership—and so the contacts of the partnership are necessarily the contacts of the partners. See Jackson Nat'l Life Ins. Co. v. Greycliff Partners, 2 F. Supp. 2d 1164, 1167 (E.D. Wis. 1998). However, it does not follow that the contacts of the partnership are attributable to the officers and employees of the partnership who are not also partners. See also Pavlic, 169 Wis. 2d at 590 n.2 ("Because Louis was acting on behalf of a corporation, this case differs from the case where one partner's actions expose the other partner to personal jurisdiction in

5

Heritage does not argue that Britton has personally conducted business in Wisconsin on behalf of Security Life or ReliaStar. It does not, for example, contend that Britton personally solicited business from Wisconsin residents or had regular communication with Wisconsin residents. Instead, Heritage points out that between 2006 and 2010 Britton's signature appeared on all insurance policies issued by Security Life and ReliaStar, including those that were issued in Wisconsin. However, Britton did not personally solicit the business that resulted in Security Life and ReliaStar issuing the policies that bear his signature, he did not personally transmit those policies to Wisconsin, and he is not personally liable in connection with the policies. Heritage states that when Britton signed the policies he bound Security Life and ReliaStar to insurance contracts in force in Wisconsin. That may be true, but the acts that bound the corporations did not occur in Wisconsin; they occurred wherever Britton was when he signed the policies. Once the corporations were bound by the policies, it was the corporations, not Britton, that performed them. Thus, Britton's signing the policies is not a meaningful contact with Wisconsin that gives rise to general personal jurisdiction.

Heritage also points out that Britton must have received a "substantial benefit" from the premiums that Security Life and ReliaStar collected on their Wisconsin policies. Although Heritage does not explicitly identify the substantial benefit it is referring to, I assume that it means the indirect benefits that Britton received in the form of his salary and other compensation as president of the corporations. However, all officers and employees of a corporation derive this kind of indirect benefit from the corporation's activities in a state, and Heritage does not cite any authority supporting the proposition that such an indirect benefit can

a foreign state.").

6

subject an officer or employee to general jurisdiction in a state. (See Br. in Opp. at 13, ECF No. 38.)

**B.      Wisconsin Statute § 801.05(4)(a): Local Injury; Foreign Act**

Heritage next argues that Britton is subject to specific personal jurisdiction under Wis. Stat. § 801.05(4), which provides that a defendant is subject to personal jurisdiction

> [i]n any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury, either:
>
> (a) Solicitation or service activities were carried on within this state by or on behalf of the defendant; or
>
> (b) Products, materials or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade.

Heritage argues that it was injured in this state by Britton's out-of-state negligence, and that solicitation or service activities were carried on within this state by or on behalf of Britton. Britton does not dispute that Heritage adequately alleges that it was injured in this state by his out-of-state negligence. However, Britton contends that Heritage cannot establish that any solicitation or service activities were carried on within this state by him or on his behalf.

Heritage does not contend that Britton personally conducted any solicitation or service activities in Wisconsin, either on his own behalf or on behalf of Security Life or ReliaStar. However, Heritage contends that the solicitation and service activities conducted by the agents and employees of Security Life and ReliaStar in this state count as solicitation or service activities conducted on behalf of Britton. But the solicitation and service activities of those agents and employees were carried out for the benefit of Security Life and ReliaStar, not Britton

7

personally, so those activities do not satisfy the "by or on behalf of the defendant" part of the statute.

Heritage asserts that Britton, as president of Security Life and ReliaStar, "controls" the corporation's solicitation and service activities in this state, and that such control allows those activities to be imputed to him. In support of the proposition that acts of a corporation may be imputed to an officer where control is shown, Heritage cites State v. Advance Marketing Consultants, Inc, 66 Wis. 2d 706 (1975). However, that case does not stand for the proposition that an officer's control of a corporation's activities in Wisconsin allows the corporation's contacts in Wisconsin to be attributed to the officer. Advance Marketing involved an action for fraudulent advertising against a corporation and one of its officers. The corporation placed the allegedly fraudulent ads in newspapers circulated in Wisconsin. When a person in Wisconsin responded to one of the ads, the officer personally traveled to Wisconsin to meet with the person and negotiate a contract. Thus, the cause of action in Advance Marketing arose directly out of the officer's own activities in Wisconsin—visiting a customer who responded to the allegedly fraudulent ads. Indeed, the statutory basis for jurisdiction in that case was not the "local injury; foreign act" provision at issue in the present case, but a provision of the long-arm statute dealing with claims arising out of acts or omissions that the defendant committed in Wisconsin. Id. at 715. Although the Advance Marketing court also attributed significance to the fact that the officer "operated" the corporation, the case does not stand for the proposition that an officer's control, standing alone, gives rise to personal jurisdiction over the officer. Indeed, as the Wisconsin Court of Appeals reads Advance Marketing, control alone is insufficient to confer personal jurisdiction over an

8

officer; "[t]here must be some act or omission by that officer in Wisconsin to justify personal jurisdiction." Pavlic, 169 Wis. 2d at 594. In Advance Marketing, that act was traveling to Wisconsin to visit a customer who responded to one of the ads at issue in the lawsuit. Here, Britton has committed no act or omission in Wisconsin, and therefore whatever "control" he may have exercised over Security Life and ReliaStar's activities in Wisconsin is not sufficient to create personal jurisdiction under Wis. Stat. § 801.05(4).

**C.     Wis. Stat. § 801.05(10): Insurance or Insurers**

Heritage's remaining basis for jurisdiction under the long-arm statute is Wis. Stat. § 801.05(10), which provides for personal jurisdiction over a defendant in an action arising out of "a promise made . . . by the defendant to insure upon or against the happening of an event." Heritage points out that this action arises out of promises made by Security Life to Heritage regarding insurance. While that much may be true and may support the exercise of personal jurisdiction over Security Life, it does not create personal jurisdiction over Britton. Britton is not himself an insurer and did not make any insurance-related promises to Heritage or any other person.[2]

### III.  CONCLUSION

Britton is not within the reach of Wisconsin's long-arm statute. For this reason, his motion to dismiss must be granted. I therefore do not consider whether exercising personal

---

[2] I reject Heritage's argument that Britton has conceded that he is subject to personal jurisdiction under § 801.05(10) by not discussing that provision of the long-arm statute in his opening brief. Britton had no reason to anticipate that Heritage would rely on this particular provision, which on its face applies only to insurers, and so Britton appropriately addressed this argument for the first time in his reply brief.

9

jurisdiction over Britton would be consistent with due process.  Accordingly, **IT IS ORDERED** that Britton's motion to dismiss for lack of personal jurisdiction is **GRANTED.**

Dated at Milwaukee, Wisconsin, this 30th day of March 2012.

                                                      s/ Lynn Adelman
                                                      LYNN ADELMAN
                                                      District Judge